[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12284
_____

D.C. Docket No. 1:13-cv-24700-KMW

WILLIAM L. ROBERTS, II,
a.k.a. Rick Ross,
ANDREW HARR, et. al.,

                                        Plaintiffs - Appellants,

versus

STEFAN KENDAL GORDY,
SKYLER AUSTEN GORDAY, et. al.,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 15, 2017)

Before WILSON and ROSENBAUM, Circuit Judges, and TITUS,[*] District Judge.

TITUS, District Judge:

William L. Roberts II, Andrew Harr, and Jermaine Jackson (collectively "Appellants"), who are artists in the hip-hop industry, appeal the dismissal of their copyright infringement case. On appeal, they argue that their copyright registrations were improperly invalidated under 17 U.S.C. § 411 without a showing of scienter and that they made a proper showing of copyright ownership. Appellees counter that 17 U.S.C. § 411(b)(1) does not require scienter for nullification of a copyright registration and that a web of transfer and licensing agreements reflect a murky disposition of legal ownership. The Court need not reach a decision on the ownership issue because the district court misapplied the law by invalidating the copyright registrations. Accordingly, the district court's dismissal order will be reversed and remanded for further proceedings.

## I.

Appellants are the authors of the classic rap song, *Hustlin'*.[1] In the wake of the success of *Hustlin'*, Stefan Gordy and Skyler Gordy (collectively p/k/a

---

[*] Honorable Roger W. Titus, United States District Judge for the District of Maryland, sitting by designation.

[1] For the uninitiated, *Hustlin'* is an ode to drug distribution. The composition discusses the criminal activity of "steady slangin' yayo" (dealing 'cocaine'), describes the fruits of drug distribution like a "seven forty-five, white on white" with "custom spinnin' wheels" (referring to a BMW Model 745), and brags of connections with "Pablo [Escobar]" and "[Manuel] Noriega." The song's refrain contains numerous variations of the phrase, "every day I'm hustlin'" (dealing drugs).

"LMFAO") authored a highly successful dance song, *Party Rock Anthem*. Cashing in on its popularity, Kia Motors used *Party Rock Anthem* as the soundtrack for one of its now equally famous dancing-hamsters commercials. Appellants, believing that this song allegedly used their lyrics and music, filed a copyright infringement suit against LMFAO, Kia, and all of the other Appellees in this case. Although not part of *Party Rock Anthem*'s refrain, at issue in this litigation is a phrase in its beat drop—"every day I'm shufflin'"—which LMFAO argued below was parody/fair use (an argument rejected by the district court and not currently on review in this appeal).[2]

Appellees' Answers asserted a series of defenses, including non-infringement, de minimus infringement, and parody/fair use. Although their Answers acknowledged the existence of multiple copyright registrations for *Hustlin'*, Appellees never sought to argue *invalidity*. This legal strategy was confirmed at various stages of the litigation. First, in opposition to another party's attempt to intervene, Appellees stated, "This is not a case . . . in which defendants are challenging the existence or validity of a copyright. . . . [T]he only issue is whether [defendants] engaged in unlawful copying." Defs.' Opp'n., App. Doc. 177, at 17. Furthermore, Appellees opposed the inclusion of a proposed jury instruction on validity by stating, "This instruction is not necessary. Defendants do

---

[2] We express no opinion on the lower court's preliminary ruling concerning parody/fair use.

3

not contend that the copyright in *Hustlin'* is 'invalid.'"  Joint Proposed Jury Instruction 9.4, App. Doc. 372-1.

Despite Appellees' urging to the contrary, the record clearly indicates that the issue of the validity of the copyright registrations was not raised by them, but rather by the district court sua sponte.  *See, e.g.*, Ct. Order, App. Doc. 399, at 5–7.  And it was on the grounds of invalid copyright registrations and failure to demonstrate ownership[3] that the district court dismissed this case at summary judgment.  *See id.* at 42.  Subsequently, Appellants timely appealed.

## II.

We review the district court's "interpretation and application of the law" in the grant or denial of summary judgment de novo.  *Ziegler v. Martin Cnty. Sch. Dist.*, 831 F.3d 1309, 1318 (11th Cir. 2016).  Furthermore, we also review de novo "[t]he sua sponte dismissal of an action for failure to state a claim."  *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004).

## III.

When this lawsuit commenced, three copyright registrations had been filed and granted for *Hustlin'*.  Each contained errors, but it has never been contended that the Appellants were not the true authors of the work.  The first copyright

---

[3] Notably, a copyright registration provides a presumption of copyright ownership.  *See Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 903 (11th Cir. 1986).  Invalidation of a registration eliminates this presumption.

4

registration, Pau 3-024-979, incorrectly stated that it was unpublished because promotional phonorecords of the *Hustlin'* composition had been distributed to local disc jockeys.  The second copyright registration, PA 1-334-589, incorrectly stated that the creation date was 2006 (instead of 2005) and did not disclose that there was a prior registration.  The third copyright registration, PA 1-367-972, suffered from the same errors—it incorrectly stated the creation date and did not disclose either of the prior registrations.

In applying 17 U.S.C. § 411(b)(2), the district court asked the Copyright Office to weigh in on "what effect, if any, allegedly inaccurate information would have had on the Copyright Office's issuance of certain copyright registrations." *See* Resp. of the Register of Copyrights, App. Doc. 383, at 1.  The Copyright Office responded that it "would have refused to issue a registration for an unpublished work" had it known of the publication/distribution information for the first registration.  *See id.* at 5.  However, the Copyright Office's response does not indicate whether it would have permitted the first registration as a published work.[4]

---

[4]    Absent from the Copyright Office's response is any indication as to whether any of the inaccuracies from the three registrations would have been returned to the applicant for remediation, and whether that remediation would have caused the Copyright Office to subsequently accept the registrations during the application period.  Although not dispositive of the issue of materiality, this context is relevant.
*See* U.S. Copyright Office, Compendium of Copyright Practices (3d ed. 2014) ("Compendium (Third)").
    The Copyright Office does not generally question facts alleged in an application "unless they are implausible or conflict with information provided elsewhere."  Compendium (Third) § 1904.2.  While this explains the Copyright Office's failure to identify the inaccuracies regarding

Additionally, the Copyright Office advised that it "would have refused [the second] registration" had it known of the incorrect creation date.  *See id.*  Lastly, the Copyright Office stated that it "would have refused [the third] registration" had it known of the incorrect creation date or the prior registration for a published work.  *See id.*

The district court then applied 17 U.S.C. § 411(b)(1), and concluded that the Appellants—as the authors—would have had knowledge of these errors, and that the Copyright Office's response indicated the materiality of these inaccuracies. The district court rejected the argument that § 411(b) requires "an intent to defraud," and instead concluded that the plain text of the statute only requires "knowledge that it was inaccurate."  *See* Ct. Order, App. Doc. 399, at 21; *contra Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 828 (11th Cir. 1982); *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986); *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*,

---

publication and creation date, it does not explain why the Office failed to contemporaneously detect that *the same song by the same authors* had previously been granted registration(s).

The Copyright Office's response itself notes that examiners often perform reviews and correspond with filers to correct inaccuracies such as those present in the *Hustlin'* registrations, *see* Resp. of the Register of Copyrights, App. Doc. 383, at 4–5, including incorrect years of creation, *see* Compendium (Third) § 611.4, previous registrations, *see* Compendium (Third) § 621, and whether works have been published, *see* Compendium (Third) § 1904.3.

In instances of *these same errors*, the Copyright Office "provides the applicant an opportunity to correct the error or verify the facts."  Resp. of the Register of Copyrights, App. Doc. 383, at 5; *see also* Compendium (Third) § 605.6 (providing applicants 20 days for email responses or 45 days for postal mail responses).

573 F.3d 1186, 1201 (11th Cir. 2009).  In turn, the district court invalidated all of the copyright registrations and dismissed the case.

## IV.

A copyright provides for the exclusive right "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 106(3).  To establish a claim of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  Only the former element is at issue in this appeal.  Ownership "vests initially in the author or authors of the work," 17 U.S.C. § 201(a), and a copyright registration provides prima facie evidence of ownership, *see Donald Frederick Evans*, 785 F.2d at 903.

Generally, courts "are obligated to raise concerns about [a] district court's subject matter jurisdiction sua sponte."  *See, e.g.*, *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1304 (11th Cir. 2011).  While registration is a prerequisite to federal litigation under 17 U.S.C. § 411(a), a federal court's jurisdiction is not conditioned on a registration.  *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 164–65 (2010) (finding no conditional jurisdiction for copyright infringement actions based on 28 U.S.C. §§ 1331 and 1338).  While the Supreme Court has declined to address whether "district courts may or should

7

enforce [the registration precondition] sua sponte," it did determine that "a copyright holder's failure to comply with § 411(a)'s registration requirement [does not] deprive[] a federal court of jurisdiction to adjudicate his copyright infringement claim." *See id.* at 171, 157. Logically, if failure to register does not eliminate subject matter jurisdiction, an improper registration would not either. Thus, the district court had jurisdiction.

In any event, the district court's review of validity was clearly not an issue of subject matter jurisdiction, but rather the determination of an affirmative defense. *Cf. Original Appalachian*, 684 F.2d at 821, 27–28 ("While the burden of persuasion as to the validity of the copyright rests with the plaintiff in an infringement action, once he produces a copyright certificate he establishes a prima facie case of validity of his copyright and the burden of production shifts to the defendant to introduce evidence of invalidity.") (internal citations omitted); *see also Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) ("Once the plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid.").

Correspondingly, failure to plead an affirmative defense typically results in waiver of that defense. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239–40 (11th Cir. 2010). Courts "generally lack the ability to raise an affirmative defense sua sponte" with minor exceptions that are not relevant to copyright infringement

8

actions.  *See id.* at 1240 (finding that the district court erred by raising a "fair use" defense sua sponte in a copyright infringement action).  Here, the district court—and not the defense—raised the issue of registration validity, and thus it erred in the manner of its review.

## V.

A "[c]opyright inheres in authorship and exists whether or not it is ever registered.  The Copyright Act makes clear that registration is a separate issue from the existence of the copyright itself."  *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531 (11th Cir. 1994).  While registration is a prerequisite to an infringement suit, *see* 17 U.S.C. § 411, a "registration is not a condition of copyright protection," 17 U.S.C. § 408(a).  And "certainly, if registration does not confer copyright, neither can erroneous registration take it away.  Copyright ownership and the effect of mistaken copyright registration are separate and distinct issues."  *Arthur Rutenberg*, 29 F.3d at 1531.

Under the Copyright Act of 1976, registration is a prerequisite to filing an infringement action.  *See* 17 U.S.C. § 411(a).  In some instances, inaccuracies can invalidate a registration, thus voiding compliance with this prerequisite.

> (b)(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless--

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

(2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b). This statute, which Congress modified in 2008, codifies the defense of Fraud on the Copyright Office.[5] Appellees assert that the 2008 amendment to the Copyright Act "precludes reading 'fraud' into the statute," *see* Appellees Br. at 20, and they averred at oral argument that the 2008 amendment served as a 'sea change' in copyright policy that superseded this Court's precedent (even though the amendment was enacted between the *Original Appalachian* and *St. Luke's* decisions). They are wrong. This Court's analysis in *St. Luke's* directly cites to the post-2008 amendment statutory language and reaffirmed the finding from *Original Appalachian* that the "intentional or purposeful concealment of

---

[5] *See generally, e.g.*, U.S. Copyright Office, *Annual Report of the Register of Copyrights, Fiscal Year Ending September 30, 2008* 12–13 (2008), https://www.copyright.gov/reports/annual/2008/ar2008.pdf ("The Prioritizing Resources and Organization for Intellectual Property Act (Pub. L. No. 110-403), also known as the PRO-IP Act, strengthens the intellectual property laws of the United States in several respects. For example, it amends section 411 of the copyright law to codify the doctrine of fraud on the Copyright Office in the registration process.").

relevant information" is required to invalidate a copyright registration. *See St. Luke's*, 573 F.3d at 1201.

Materiality hinges on whether the Copyright Office would have refused the application if the inaccuracy were known. *See id.* In order to aid in the determination of materiality, the district court must make an inquiry to the Copyright Office. *See id.*; 17 U.S.C. § 411(b)(2).

On the other hand, the scienter necessary for invalidating a registration is also clear and well settled. *See Original Appalachian*, 684 F.2d at 828 ("While . . . omissions or misrepresentations in a copyright application can render the registration invalid, a common element among them has been intentional or purposeful concealment of relevant information. Where this element of 'scienter' is lacking, courts generally have upheld the copyright."); *Donald Frederick Evans*, 785 F.2d at 904; *St. Luke's*, 573 F.3d at 1201 ("Omissions or misrepresentations in a copyright application can render the registration invalid where there has been intentional or purposeful concealment of relevant information. Thus, there must be a showing of scienter in order to invalidate a copyright registration.") (internal citations omitted).

Therefore, in order to invalidate a registration, (1) the application must contain inaccuracies, (2) the inaccuracies must be material, and (3) the applicant must have the required scienter of intentional or purposeful concealment. While

11

the district court correctly found material inaccuracies in the registrations, it erred by not applying the appropriate scienter for Fraud on the Copyright Office.

Rappers are skilled in poetry and rhythm—not necessarily in proper copyright registration procedures. While error is not generally a strong legal argument, it is a sufficient counter to a claim of Fraud on the Copyright Office. This is not a case where *Rapper A* attended a *Rapper B* concert, heard a delightful song, stole the composition, and fraudulently registered it with the Copyright Office—far from it. There is no dispute by any party that Appellants authored and created *Hustlin'*, and there is no dispute that they continue to receive the writers' share of royalties from their musical composition. Furthermore, Appellees never proffered any argument or theory as to why Appellants would attempt to deceive the Copyright Office, when they are, in fact, the undisputed authors.

As indicated by the absence of any sort of motive for deception, the errors made in each of the registrations were done in good faith. As portions of the ownership interest were acquired by record companies, those companies— incorrectly, but in good faith—filed for a new registration to protect their newly acquired interests presumably under the assumption that no previous registration had been filed.

The failure of the first registration to correctly assert a published work on the basis of promotional phonorecords provided to disc jockeys—as opposed to an

12

unpublished work that was still awaiting album publication—lacks any sort of deceptive intent, especially since there is nothing to indicate that the registration would not have been approved as a published work.  Furthermore, nothing of substance could be gained by listing the incorrect creation date of 2006 instead of 2005 on the latter two registrations.  Considering that the album publication occurred in 2006, it seems that an understandable—albeit incorrect—definition of publication persisted in the second and third registration.

While all of these inaccuracies are not insignificant given the Copyright Office's response, none appear to have been made with the scienter necessary for invalidating a registration as outlined in *Original Appalachian* and *St. Luke's*.  The district court thus erred in its application of the law.  A proper application of 17 U.S.C. § 411(b) under the framework of *Original Appalachian* and *St. Luke's* would have yielded the result of validity of registration—albeit plural registrations.

And while "[a]s a general rule only one copyright registration can be made for the same version of a particular work," specific exceptions are recognized by a federal regulation.  37 C.F.R. § 202.3(b)(11).  In addition to these three exceptions contained in a federal regulation, logic would dictate that *Original Appalachian* and *St. Luke's* would support at least one more—a good faith, redundant registration for a published work.

**VI.**

13

Notwithstanding the merits of infringement or parody/fair use, Appellants are the undisputed authors of *Hustlin'*, and they should be afforded the opportunity to protect their copyright from what they view as an unlawful use. Their song was registered… and re-registered… and re-registered, but the good faith inaccuracies in those registrations should not preclude the undisputed authors from copyright protection. Having found that the registrations remain valid under *Original Appalachian* and *St. Luke's*, the Court need not consider the district court's analysis for actual or constructive ownership because Appellants have met their burden of production for establishing a prima facie case of ownership and copyright validity.

In short, the Appellants were erroneously "hustled" out of court, and now deserve to be heard on the merits. Accordingly, the district court's dismissal order is hereby **REVERSED**, and the case is **REMANDED** for further proceedings.

14