[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14999
_____

D.C. Docket No. 1:17-cv-23696-KMW


CUTLER BAY APARTMENTS, LLC,
FIRST CUTLER GARDENS, LLC,

                                        Plaintiffs - Appellants,

versus

BANK OF AMERICA, N.A.,

                                        Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 19, 2020)

Before MARTIN, GRANT, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Cutler Bay Apartments, LLC, and First Cutler Gardens, LLC (collectively, "Appellants"), two Florida limited liability companies, appeal the district court's order granting summary judgment in favor of Bank of America, N.A. ("BANA") on Appellants' claims of breach of contract and breach of the covenant of good faith and fair dealing. For the reasons discussed below, we affirm the district court's grant of summary judgment.

## I.    FACTUAL AND PROCEDURAL HISTORY

Appellants wanted to refinance loans tied to two apartment complexes located in Miami-Dade County. To that end, on March 27, 2014, Appellants signed two exclusive brokerage agreements with CLD Capital, Inc. ("CLD"), under which CLD would negotiate the refinancing on Appellants' behalf (the "CLD Agreements"). The CLD Agreements provided that that CLD would have the exclusive right to negotiate loans on behalf of Appellants for ninety days following the execution of the CLD Agreements, that Appellants would pay CLD an origination fee of 0.5 percent of the refinanced loan amounts, that CLD would be entitled to any income losses if Appellants breached the exclusivity provisions, and that arbitration of disputes arising from a breach of the agreements would occur in Georgia.

On April 7, 2014, Appellants entered into two identical loan application agreements (the "Loan Applications") with BANA. The Loan Applications set forth the terms under which BANA agreed to consider providing refinancing to

2

Appellants.  The Loan Applications also addressed potential brokerage agreements that either party might enter, stating:

> **Brokerage and Referral Fees**: By execution of this Application, the Borrower agrees to pay any and all fees imposed or charged by all brokers, mortgage bankers and advisors hired or contracted by the Borrower who brought about the issuance of this Application or the consideration of or making of the Proposed Loan pursuant hereto, and agrees to indemnify and hold Lender harmless from and against any and all claims, demands and liability for brokerage commissions, assignment fees, finder's fees or other compensation whatsoever arising from this Application or Lender's making of the Proposed Loan which may be asserted against Lender by any person.  Lender hereby agrees to pay any and all fees imposed or charged by all brokers hired solely by the Lender.  In addition, Borrower acknowledges that Lender may from time to time enter into an agreement under which Lender provides compensation to a broker, mortgage banker, advisor, correspondent or finder (which may be affiliated with Lender) who brought about the issuance of this Application or the consideration of or making of the Proposed Loan, whether in the form of referral, incentive, profit sharing or servicing related fees, provided, however, such parties shall have no authority to act on behalf of, or bind, Lender in any manner.  Lender agrees to indemnify and hold Borrower harmless from and against any and all claims, demands and liability arising under such agreement.

The parties further agreed that the Loan Applications would be governed by New York law.  Finally, the Loan Applications included Appellants' requested carveout to the "Exclusivity" provisions so that Appellants could continue separate refinancing negotiations with BankUnited, NA ("BankUnited").  Significantly, CLD was not involved in Appellants' negotiations with BankUnited.

During the refinancing process, CLD's Vice President, Leanne Eicoff, discussed with James Angoff, an employee of BANA, the prospect of securing a

3

referral or finder's fee of 0.5 percent for CLD if CLD was able to successfully convince Appellants to refinance their loans with BANA. At the time, Appellants were unaware of any discussion about a potential referral or finder's fee for CLD. Ultimately, Appellants did not refinance with BANA. Instead, Appellants refinanced with BankUnited.

On October 8, 2014, CLD made a demand for arbitration and presented a statement of claims against Appellants. In its demand, CLD claimed that Appellants breached the exclusivity provisions in the CLD Agreements and sought damages and its attorney's fees "pursuant to the [CLD] Agreements." As damages, CLD sought 0.5 percent of each proposed loan amount for Appellants' breach of the CLD Agreements' exclusivity provisions, as well as the additional 0.5 percent of each proposed loan CLD claimed it would have received from BANA as a finder's fee. Appellants and CLD proceeded to arbitration (the "CLD Arbitration"). On February 6, 2016, the arbitrator denied CLD's claims under the CLD Agreements against Appellants but did not award Appellants their attorney's fees for defending themselves against CLD's claims.

Subsequently, on October 10, 2017, Appellants sued BANA for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing. In their Complaint, Appellants alleged that BANA failed to indemnify Appellants against CLD's claims in the CLD Arbitration, as required by the Loan Applications, and that

as a result, Appellants suffered damages of over $200,000 in legal fees and costs defending themselves. In its Answer, BANA denied all of Appellants' allegations and raised several affirmative defenses. After various motions were filed by the parties, BANA moved for summary judgment. In its motion, BANA argued that, as a matter of law, BANA owed no duty to indemnify Appellants, as the indemnity provisions in the Loan Applications did not apply to the contractual dispute between CLD and Appellants that arose from the CLD Agreements and that was the subject of the CLD Arbitration. BANA further argued that Appellants' claim for breach of the covenant of good faith and fair dealing failed as a matter of law, as Appellants were unable to alter BANA's obligations under the unambiguous terms of the Loan Applications' indemnity provisions.

The district court referred BANA's motion for summary judgment to a magistrate judge for a report and recommendation. On September 24, 2018, the magistrate judge issued an Amended Report and Recommendation (the "Report and Recommendation"). In his Report and Recommendation, the magistrate judge determined that no binding terms of the Loan Applications ever materialized because certain conditions precedent were not met and, thus, no indemnity agreement was ever perfected between the parties. The magistrate judge therefore concluded that BANA had no duty to indemnify Appellants and recommended granting summary judgment in favor of BANA on the breach of contract claim. As an alternate ground

for summary judgment, the magistrate judge also considered whether BANA's duty to indemnify, assuming one did arise, extended to CLD's claims in the CLD Arbitration. Applying New York law, the magistrate judge determined that the CLD Agreements and the Loan Applications were two separate sets of documents governed by different law and prepared by independent entities and that BANA was not even referenced in the CLD Agreements. The magistrate judge further noted that CLD's claims in arbitration were based solely on Appellants' breach of the CLD Agreements. The magistrate judge rejected Appellants' argument that BANA had a duty to indemnify them against CLD because BANA offered to pay CLD a commission if CLD successfully convinced Appellants to close their refinancing with BANA, concluding that such a claim lay outside the scope of indemnity liability under New York law. The magistrate judge therefore recommended that summary judgment be entered in favor of BANA on Appellants' breach of contract claim on this ground as well.

Turning to Appellants' claim of breach of the covenant of good faith and fair dealing, the magistrate judge noted that New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing outside the scope of a traditional breach of contract claim." The magistrate judge noted that, although "deficient," Appellants' breach of contract claim arose from some contractual language in the Loan Applications. As such, the magistrate

judge found that the allegations in the second count were "not viable claims because they [were] inconsistent with the terms of the parties' agreement," which "simply required BANA to diligently evaluate [Appellants'] request for a loan and, if that loan resulted from or related to BANA's broker, to indemnify [Appellants] for any claims arising out of an agreement between BANA and the broker." Finding this claim also had no legal merit, the magistrate judge recommended summary judgment be entered in favor of BANA. Appellants filed objections to the Report and Recommendation, which BANA opposed.

On October 30, 2018, the district court issued an order affirming and adopting the magistrate judge's Report and Recommendation, finding that:

> [(1)] the plain language of the Loan Applications at issue provides that the indemnity provision was not binding unless [BANA] issued a loan, and it never did so; (2) even if the indemnity provision were binding, it would not apply to [Appellants'] indemnification claims in this case; and (3) no liability exists for [Appellants'] related claim for breach of good faith and fair deadline [sic].

In a separate order, the district court entered final judgment in favor of BANA on all of Appellants' claims. This timely appeal ensued.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's order granting summary judgment, "view[ing] the evidence (and inferences) in the light most favorable to the . . . non-moving parties." *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018). "Summary judgment is appropriate only when 'the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)). "A dispute over an issue of material fact is genuine if the evidence would permit a reasonable jury to return a verdict for the party against whom summary judgment is sought." *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1400 (11th Cir. 1998). "If, however, the evidence of a genuine issue of material fact is 'merely colorable' or of insignificant probative value, summary judgment is appropriate." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

## III.  ANALYSIS

On appeal, Appellants argue that the district court erred by granting summary judgment in favor of BANA on Appellants' breach of contract and breach of the covenant of good faith and fair dealing claims. We first consider Appellants' arguments on the breach of contract claim before turning to their arguments regarding the breach of covenant claim.

### A.    Breach of Contract Claim

In his Report and Recommendation, the magistrate judge considered two separate grounds for granting summary judgment in favor of BANA on Appellants' breach of contract claim, both of which the district court adopted. First, the

magistrate judge determined that any duty to indemnify Appellants was never perfected, as no binding terms of the Loan Applications materialized because certain conditions precedent were not satisfied. Appellants assert that BANA waived this argument because BANA failed to raise it as an affirmative defense, and the district court was unable to consider it *sua sponte* as a basis for granting summary judgment.

A "failure to plead an affirmative defense typically results in waiver of that defense," and "[c]ourts 'generally lack the ability to raise an affirmative defense sua sponte.'" *Roberts v. Gordy*, 877 F.3d 1024, 1028 (11th Cir. 2017) (quoting *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010)). This Court has previously reversed a district court's grant of summary judgment where the district court *sua sponte* considered an argument never raised in a defendant's pleadings. *See, e.g.*, *Latimer*, 601 F.3d at 1238–41. Here, BANA never raised as an affirmative defense that the indemnity provisions in the Loan Applications were not perfected. Instead, BANA alleged that the scope of the indemnity provisions did not apply to CLD's claims against Appellants in the CLD Arbitration. Accordingly, it was improper for the magistrate judge to consider, and the district court to adopt, this ground as a basis for granting summary judgment on Appellants' breach of contract claim.

As a separate ground for recommending summary judgment, however, the magistrate judge also considered BANA's argument that the indemnity provisions

9

did not extend to CLD's claims against Appellants in the CLD Arbitration. The magistrate judge determined that the CLD Agreements and Loan Applications were two separate sets of agreements and that CLD's claims against Appellants in the CLD Arbitration were based solely on Appellants' breach of the CLD Agreements, not any agreement between CLD and BANA. The magistrate judge noted that the parties had agreed to apply New York law to the Loan Applications. As such, the magistrate judge found that, under New York law, the indemnity provisions did not apply to the CLD Arbitration claims and recommended granting summary judgment on this separate basis, which the district court also adopted. Appellants argue that the magistrate judge and district court erred by finding the indemnity provisions did not apply to CLD's claims against them. We disagree.

Under New York law, an indemnity provision "should be construed so as to encompass only that loss and damage which reasonably appear to have been within the intent of the parties." *Niagara Frontier Transp. Auth. v. Tri-Delta Constr. Corp.*, 487 N.Y.S.2d 428, 431 (N.Y. App. Div. 1985), *aff'd*, 484 N.E.2d 1047 (N.Y. 1985). Furthermore, an indemnity provision "should not be extended to include damages which are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered under the contract." *Id.*; *accord McKay v. Weeden*, 50 N.Y.S.3d 684, 689–90 (N.Y. App. Div. 2017). As noted above, the Loan Applications' indemnity provisions each provided the following:

10

> Borrower acknowledges that Lender may from time to time enter into an agreement under which Lender provides compensation to a broker, mortgage banker, advisor, correspondent or finder . . . who brought about the . . . making of the Proposed Loan, whether in the form of referral, incentive, profit sharing or servicing related fees, provided, however, such parties shall have no authority to act on behalf of, or bind, Lender in any manner.  Lender agrees to indemnify and hold Borrower harmless from and against any and all claims, demands and liability *arising under such agreement*.

(emphasis added).

 Reviewing the record in the light most favorable to Appellants, we find that BANA had no duty to indemnify Appellants against CLD's claims in the arbitration, as those claims did not arise under a referral or finder's fee agreement between CLD and BANA.  Prior to the execution of the Loan Applications between Appellants and BANA, Appellants and CLD entered into the CLD Agreements, which provided that CLD had the exclusive right to negotiate loans for Appellants' apartment complexes on behalf of Appellants for a ninety-day period following the execution of the agreements.  CLD's demand and statement of claims was based solely on the CLD Agreements, alleging that Appellants "were bound to exclusively utilize and work with CLD with regard to refinancing" and "[i]nstead of complying . . . , [Appellants] breached the exclusivity agreement by sourcing the refinancing . . . from another lender."  Moreover, CLD sought damages and attorney's fees "pursuant to the [CLD] Agreements."  Thus, the only contracts at issue in the CLD Arbitration were the CLD Agreements, which are not covered by the Loan Applications' indemnity provisions.

11

Moreover, even if the scope of the CLD Arbitration could be considered to include the Loan Applications because of the potential referral fee CLD negotiated with BANA, Appellants did not close any loan with BANA. The discussion between CLD and BANA about a potential finder's fee if Appellants closed with BANA does not constitute an executed finder's fee agreement between CLD and BANA that could fall within the Loan Applications' indemnity provisions. The fact that Appellants did not close with BANA rendered the indemnity provisions inapplicable.

We also reject Appellants' suggestion to expand the Loan Applications' indemnity provisions to cover any engagement of a broker by BANA as contrary to New York law's strict construction of indemnity provisions. *See McKay*, 50 N.Y.S.3d at 689 ("It is axiomatic that, '[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.'" (alteration in original) (quoting *Hooper v. AGS Computers, Inc.*, 74 N.E.2d 903, 905 (N.Y. 1989))). The indemnity provisions at issue required BANA to indemnify Appellants only for claims arising from an agreement by BANA with a broker to pay that broker a finder's fee where the broker referred a borrower to BANA who then went forward and closed on a loan with BANA. For example, BANA would have been required to indemnify Appellants in a situation where BANA had entered into a finder's fee

12

agreement with CLD, the loans had closed, BANA refused to pay CLD a finder's fee, and CLD then sought the finder's fee from Appellants instead of BANA. That is not what happened here, and the fact that CLD sought the amount it would have earned as a finder's fee if Appellants had closed with BANA as damages in the CLD Arbitration by itself does not trigger BANA's duty to indemnify Appellants.

Accordingly, because CLD's claims in the CLD Arbitration arose from the CLD Agreements and not from the Loan Agreements, we hold that the district court properly granted summary judgment in favor of BANA on the breach of contract claim.

B.     Breach of Covenant Claim

Finally, we address Appellants' argument that the district court erred in granting summary judgment in favor of BANA on their breach of the covenant of good faith and fair dealing claim. Specifically, Appellants contend that BANA's alleged "acts and omissions" during the CLD Arbitration are "distinct facts" separate from their claim alleging breach of the Loan Applications' indemnity provisions. This argument is without merit.

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052,

1056 (2d Cir. 1992)).  "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Id.* at 81; *accord ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003).  "A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract."  *Harris*, 310 F.3d at 80 (quoting *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997)); *accord Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013); *see also, e.g.*, *Canstar v. J.A. Jones Constr. Co.*, 622 N.Y.S.2d 730, 731 (N.Y. App. Div. 1995).  Thus, "a breach of the implied covenant of good faith claim can survive a motion to dismiss 'only if it is based on allegations different than those underlying the accompanying breach of contract claim.'"  *ARI*, 273 F. Supp. 2d at 522 (quoting *Siradas v. Chase Lincoln First Bank, N.A.*, No. 98 Civ. 4028, 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999)).  Additionally, where the plaintiff seeks relief that is "'intrinsically tied to the damages allegedly resulting from the breach of contract,' there is no separate and distinct wrong that would give rise to an independent claim" for breach of the implied covenant. *Id.* (citation omitted) (quoting *Alter v. Bogoricin*, No. 97 Civ. 0662, 1997 WL 691332, at *8 (S.D.N.Y. Nov. 6, 1997)).  Finally, "New York law is clear that the implied covenant cannot be used to create independent

14

obligations beyond the contract." *Id.* at 523; *accord Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291–92 (N.Y. 1995) ("The duty of good faith and fair dealing, however, is not without limits, and no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship.'" (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983))).

> In the second count of their complaint, Appellants alleged that:
>
> BANA breached the covenant of good faith and fair dealings under the Agreements by . . . allowing CLD to bring the Arbitration suit against [Appellants] and doing absolutely nothing in [Appellants'] defense, by picking sides with CLD in the Arbitration litigation, by entering into an oral promise with CLD that caused CLD to file an Arbitration suit against [Appellants], by failing to communicate in writing the existence of that promise to [Appellants] along with failing to memorialize the terms of the promise with CLD, by failing to communicate with CLD that the carve out to the exclusivity was a complete bar to CLD's action, and by failing to indemnify [Appellants] from CLD's Arbitration suit. . . . In addition, BANA refused to even attend the arbitration via skype . . . to assist [Appellants] in rebutting false testimony presented by CLD . . . .

We agree with the magistrate judge and district court that the "violations" in this claim were tied to the Loan Applications' indemnity provisions. As explained above, however, the Loan Applications do not create a duty for BANA to indemnify Appellants beyond a third-party broker's claims arising from a referral or finder's fee agreement executed between that broker and BANA. BANA therefore had no duty to indemnify Appellants for CLD's claims in arbitration. We decline to extend the implied covenant of good faith and fair dealing to the preliminary finder's fee

15

discussions between BANA and CLD, as doing so would be inconsistent with the terms of the Loan Applications. *See Dalton*, 663 N.E.2d at 291–92.

Moreover, the allegations in Appellants' claim are clearly tied to their breach of contract claim, as those allegations relate to BANA not indemnifying or otherwise participating in the CLD Arbitration. *See, e.g.*, *Cruz*, 720 F.3d at 125 (finding plaintiff's "claim for breach of the implied covenant of good faith and fair dealing" redundant where "his breach of contract claim clearly rest[ed] on the same alleged deceptive practices"). Additionally, the damages Appellants seek for their count of breach of covenant—attorney's fees for defending the CLD Arbitration—are "intrinsically tied" to the damages resulting from the breach of contract, i.e., the same amount of attorney's fees. *Cf. ARI*, 273 F. Supp. 2d at 522 (finding damages for the plaintiff's claim of breach of the implied covenant of good faith and fair dealing "intrinsically tied to" the plaintiff's breach of contract claim where the plaintiff sought to recover the exact amount of money for loss of commissions). The breach of covenant claim therefore is redundant of Appellants' breach of contract claim, and the district court properly granted summary judgment for BANA on this claim.

## IV.    CONCLUSION

The magistrate judge and district court correctly determined (1) that under the Loan Applications' indemnity provisions, BANA had no duty to indemnify

16

Appellants for CLD's claims in the CLD arbitration and (2) that Appellants' claim of breach of the covenant of good faith and fair dealing was inconsistent with the indemnity provisions, as well as redundant of the breach of contract claim. Accordingly, we hold that the district court properly granted summary judgment in favor of BANA on both counts of Appellants' complaint, and therefore affirm the district court's final judgment.

AFFIRMED.